# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CALISHA D. HARRIS,

    *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 09-CV-14184

DISTRICT JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.     RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.     REPORT

#### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

the Commissioner's decision denying Plaintiff's claim for supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 15.)

Plaintiff filed the instant claim on November 16, 2000, alleging that her disability began on November 9, 2000. (Transcript, Doc. 11 at 57.) Plaintiff has never worked. (Tr. at 73.) The claim was initially denied on April 20, 2001. (Tr. at 34.) In denying Plaintiff's claims, the Defendant Commissioner considered scleroderma as a possible basis of disability. (*Id.*) Plaintiff requested a hearing on May 1, 2001 (Tr. at 39) and in a decision dated October 24, 2002, Administrative Law Judge ("ALJ") Donald E. Limer found that Plaintiff was disabled and authorized SSI payments. (Tr. at 33.) Based on the fact that Plaintiff turned eighteen (18) years of age, a re-determination was made. On September 8, 2006, Plaintiff appeared before ALJ Joseph Brezina, who considered the application for benefits *de novo*. (Tr. at 14-24.) At the time of the hearing, Plaintiff was 21 years of age. (Tr. at 17, 57.) In a decision dated March 13, 2007, the ALJ found that Plaintiff was not disabled because her disability ceased on September 1, 2003. (Tr. at 24.) Plaintiff requested a review of this decision on May 11, 2007. (Tr. at 13.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 27, 2009, when the Appeals Council denied Plaintiff's request for review. (Tr. at 6-8.) Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision on October 23, 2009.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990).  The administrative process itself is

multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of

disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

Plaintiff received child disability benefits. Under 42 U.S.C. § 1382c(3)(H)(IV)(iii), the Commissioner is required to redetermine eligibility upon Plaintiff's reaching eighteen years of age. Under this section, the same criteria used for determining the eligibility of adults is utilized.

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

D.     **Administrative Record**

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that in 2001, when Plaintiff was in ninth grade, Plaintiff was able to function at the ninth grade level, did not spend any time in the special education room, and had no speech, language, social or physical conditions that limited her ability to function at school. (Tr. at 89.) Plaintiff's teacher further stated that she had no limitations in her ability to concentrate or attention span, ability to work without supervision, ability to understand assignments and complete them on time, response to change or routine in the classroom, ability to engage in age-appropriate self-care/hygiene, or a need for a structured setting. (Tr. at 90.)

An x-ray of Plaintiff's chest taken in October of 2000 was normal. (Tr. at 179-80.) At the same time, an upper GI "scout radiograph" showed "no gastroesophageal reflux," that the stomach and duodenum were normal and that there was "normal esophageal motility." (Tr. at 181-82.)

In November 2000, Inocencio Antonio Cuesta, M.D., of the rheumatology clinic of the Children's Hospital at Wayne State University, concluded that Plaintiff "has systemic scleroderma with diffuse skin disease, Raynaud's phenomenon, inflammatory features including friction rubs and probable synovitis of the small joints of the right hand and GI involvement with GERD." (Tr. at 162.) In December 2000, Dr. Cuesta noted that Plaintiff's "[s]cleroderma, [was] stable for now, under good control symptomatically." (Tr. at 196.)

Plaintiff's mother indicated on a Child Function report completed in 2000 that Plaintiff had no problems seeing, hearing, talking, communicating, understanding or using what she has learned. (Tr. at 76-79.) In addition, it was reported that Plaintiff had no limitations in her ability to take care of her own personal needs and safety, except for the fact that she needs help when her hands are hurting her. (Tr. at 81.) The report also indicated that Plaintiff had no limitation in her ability to pay attention and stick with a task. (Tr. at 82.) However, it was reported that Plaintiff's daily

activities were limited in that she could not attend school full-time due to her illness because she could not run around and play like other children or play sports, and because she could not be exposed to either the sun or cold weather. (Tr. at 78-80.)

A consultative examination was conducted in February 2001 but concluded that "[i]t is too soon to determine what the response to treatment will be and if severity is likely to continue for a year or more . . . ." (Tr. at 200.) However, it was noted that Plaintiff's "scleroderma [was] stable." (Tr. at 200.)

A Childhood Disability Evaluation Form completed in April 2001 concluded that Plaintiff's scleroderma was severe but did not equal one of the Listings. (Tr. at 203.) In addition, the evaluation found that Plaintiff was not limited at all in her ability to care for herself, acquire and use information, attend and complete tasks, interact and relate with others, and that Plaintiff's limitations were less than marked in her ability to move about and manipulate objects, and in her health and physical well-being. (Tr. at 205-06.) In the explanation section of the evaluation, it was stated that "Mother alleges scleroderma currently after treatment - scleroderma is stable with good response [and that] joint pain [is in] control with meds." (Tr. at 207.)

In July 2001, an esophagogastroduodenoscopy (EGD) was performed to rule out peptic ulcer disease and, after the examination, Prevacid was prescribed for Plaintiff's heartburn. (Tr. at 278-79.)

In 2002, Plaintiff participated in occupational therapy. (Tr. at 234-37, 252-53.) Plaintiff also participated in physical therapy through the Children's Hospital of Michigan at Wayne State University in 2002. (Tr. at 259-64.) In March 2002, Jorge Rose, M.D., examined Plaintiff for lower right abdominal pain to rule out gall bladder disease. (Tr. at 330-31.) In December 2002,

Plaintiff's Celebrex prescription was discontinued because Plaintiff had no joint swelling or pain symptoms. (Tr. at 395.)

In March 2003, Matthew Adams, M.D., indicated to Dr. Anne-Mare Ice that Plaintiff's "[s]cleroderma [was] clinically stable" and that Plaintiff also had "[i]ntermittent epistaxis." (Tr. at 398.) A chest x-ray taken in July 2003 was normal. (Tr. at 402.) In July 2003, gastroesophageal reflux disease was diagnosed by Suhasini Macha, M.D. (Tr. at 411.) In July 2003, a biopsy revealed reflux esophagitis, but found no pathologic abnormalities of the stomach or duodenum. (Tr. at 417.)

A Work History Report completed in 2003 indicated that Plaintiff worked as a bath attendant from June through September 2002. (Tr. at 313.) An Adult Function Report completed in 2003 indicated that Plaintiff attends school, does homework, reads, listens to music, watches television, uses a computer, and naps for approximately an hour and a half when she returns home from school. (Tr. at 322.) Plaintiff also indicated that she cleans her bedroom, dusts, irons, walks daily for exercise, drives a car, rides in a car and uses public transportation, and shops in stores once a month for an "hour or two." (Tr. at 324.) Plaintiff also states that she is able to handle finances and that she spends time with others going to the movie theater, communicating on the telephone and computer, going to church and to school events. (Tr. at 325.) Plaintiff wears a brace and splint on her hand at night and is able to walk 2 to 3 blocks or for approximately 20 minutes at a time. (Tr. at 326-27.)

An Adult Function Report completed in 2003 indicated that Plaintiff attends school and does homework but needs some help using zippers or pulling shirts over her head and brushing her hair due to stiffness and pain. (Tr. at 347-48.) Plaintiff also indicated she needs reminders to take her medications. (Tr. at 348.) Plaintiff is able to prepare microwave dishes but cannot cook a

9

dinner because it is hard for her to cut, grasp or lift pots and pans, so her mother prepares food for her. (Tr. at 348.) Plaintiff makes her bed, sorts laundry, shops in stores for one hour with rest periods and rides in a car, but indicated she cannot drive after taking her medication. (Tr. at 349.) Plaintiff further indicated that she is able to handle finances, and that she reads, watches television, uses the computer, does homework, spends time with others on the telephone and in person and attends church. (Tr. at 350.) Plaintiff indicated she uses a finger splint, foot brace, and hand splint when she sleeps. (Tr. at 351.) Plaintiff stated that she is able to follow written and spoken instructions and that she does not have any problems getting along with people in authority or other peers. (Tr. at 352.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed in September 2003 and concluded that Plaintiff was able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, was unlimited in her ability to push or pull, and was occasionally limited in the postural areas such as climbing, stooping, kneeling, and crawling. (Tr. at 426-27.) It was also concluded that Plaintiff was unlimited in handling and feeling abilities but was limited in her ability to reach in all directions and to perform fingering. (Tr. at 428.) There were no visual, communicative, or environmental limitations noted except that Plaintiff should avoid even moderate exposure to extreme cold. (Tr. at 428-29.) There was no treating source statement with which to compare findings. (Tr. at 431.)

Another Physical RFC Assessment was completed in December 2003 which came to the same conclusion as those found in September 2003, except that no manipulative or environmental limitations were found. (Tr. at 434-40.)

In June 2004, Jose Luis Granda, M.D., found that although Plaintiff "has scleroderma affecting the face, arms, hands [] [t]here is no evidence of severe Raynaud's demonstrated." (Tr. at 437.) Plaintiff sought treatment for constipation in May 2005, at which time Dr. Granda noted that Plaintiff was 20 years old, had an uneventful pregnancy and gave birth to a normal child and that "[o]ther than the Raynaud's affecting both the hands and the feet, she has no other symptoms related to scleroderma except for GERD, but is not symptomatic now that she is taking Prevacid." (Tr. at 402.) In September 2006, Plaintiff was treated for headaches and nosebleeds. (Tr. at 504-05.)

At the administrative hearing, Plaintiff testified that she tried to work as a cashier but was unable to stand long enough and had a difficult time keeping pace with the work. (Tr. at 518.) Plaintiff also testified that her daughter was one and one-half years old at the time of the hearing. (Tr. at 519.) Plaintiff testified that her mother helps her care for her daughter. (Tr. at 520-21.) The air conditioner bothered Plaintiff at the hearing and she testified that the winter weather is very difficult for her because her hands, arms and legs tighten up. (Tr. at 520.) Plaintiff testified that she had surgery in 2005, cauterization, to help stop her nosebleeds but that she still suffers from them. (Tr. at 521-22.) She also indicated she has frequent headaches each day. (Tr. at 523.) Plaintiff also indicated that she has back pain when she sits for too long and therefore takes prescription pain killers every day. (Tr. at 524.) She also testified to having chest pains "a lot" and that she takes Celebrex to combat these pains. (Tr. at 524-25.) Plaintiff's mother also testified. (Tr. at 529-33.)

The Vocational Expert ("VE") testified that if all of Plaintiff's testimony were found to be credible, such a person would be precluded from employment because of the frequency of

11

nosebleeds, headaches, and need to sleep during the day because of medications. (Tr. at 533.) The ALJ asked the VE to assume a person with Plaintiff's background who:

> would retain the ability to lift or carry up to 10 pounds frequently and 20 pounds occasionally, and by occasionally I mean from very little up to one-third of an eight-hour workday. That individual could stand or walk with normal breaks for a total of six hours in an eight hour workday. That individual could perform pushing and pulling motions with her upper and lower extremities within the aforementioned Weight restrictions. That individual could perform activities requiring bilateral manual dexterity for gross manipulation with reaching and handling. That individual could perform each of the following postural activities occasionally. These activities would be climbing, balancing, stooping, kneeling, crouching, or crawling. However, that individual should avoid work, which would involve being exposed to extreme temperatures, extreme cold temperatures.

(Tr. at 534.) The VE testified that such an individual could perform unskilled work at the light level, e.g., usher, security guard, surveillance system monitor, and visual inspector and that such jobs existed in significant number in the Southeast Michigan area and significantly higher numbers at the national level. (Tr. at 535-36.) The VE further testified that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 536.) Plaintiff's counsel asked the VE to add that the person could not work in commercially air conditioned buildings or get to work in the winter such that the person would miss two to three days per month during that season and the VE responded that these additional requirements would render the individual unable to sustain employment. (Tr. at 536-37.)

### E. ALJ Findings

The ALJ found that Plaintiff attained age 18 on May 23, 2003, and was eligible for SSI benefits as a child for the month preceding the month in which she attained age 18. Plaintiff was notified that her disability ceased as of September 1, 2003, based on a redetermination of her previous disability under the adult standards for disability. (Tr. at 19.) The ALJ also found that as of September 1, 2003, Plaintiff's systemic scleroderma with Raynaud's phenomenon, gastro

esophageal reflux disease (GERD) and subjective complaints of headaches and epistaxis (nosebleed) were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 20.) At step four, the ALJ found that Plaintiff did not have any past relevant work. (Tr. at 23.) At step five, the ALJ found that Plaintiff is a younger individual age 18-44 and is able to perform a limited range of light work. (Tr. at 21-23.) Thus, the ALJ found that Plaintiff's disability ceased on September 1, 2003. (Tr. at 24.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform light work. (Tr. at 21-23.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff contends that she is a "24 year-old adult" and that "[m]edical evidence establishes that I have severe impairments with marked limitations." (Doc. 14 at 1.) Plaintiff also uses language reiterating the standards applied to child disability cases but, as noted above, her eligibility is now considered under adult standards. 42 U.S.C. § 1382c(3)(H)(IV)(iii). Plaintiff attached several letters, forms and a copy of a prescription to her motion; however, this court's review is limited to the record before the administrative law judge and thus, will not be considered. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may

precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods the plaintiff uses to alleviate her symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

On the record before me, I suggest that substantial evidence supports the ALJ's ultimate decision as well as his decision to discount Plaintiff's credibility with respect to her complaints of disabling pain. The medical evidence shows the presence of the severe impairments considered by the ALJ, i.e., systemic scleroderma with Raynaud's phenomenon, gastro esophageal reflux disease and subjective complaints of headaches and epistaxis (nosebleed). (Tr. at 19.) However, the medical evidence of record also reveals that in December 2000, Dr. Cuesta noted that Plaintiff's "[s]cleroderma [was] stable for now, under good control symptomatically." (Tr. at 196.) More importantly, between March 2003 and June 2004, Plaintiff's "[s]cleroderma [was] clinically stable" and there was "no evidence of severe Raynaud's demonstrated." (Tr. at 398, 437.) In addition, in May 2005, Dr. Granda noted that, "[o]ther than the Raynaud's affecting both the hands and the feet, she has no other symptoms related to scleroderma except for GERD, but is not symptomatic now that she is taking Prevacid." (Tr. at 402.)

The RFC Assessment found Plaintiff able to perform a range of light work as indicated in the hypothetical posed to the VE. (Tr. at 426-31, 534-36.) I therefore suggest that the ALJ's findings also follow the opinions of the vocational expert which came in response to detailed and proper hypothetical questions that accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence. (*See* Tr. at 226-28.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

For all these reasons, after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

|  |  |
|---|---|
|  | s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗 |
|  | CHARLES E. BINDER |
| Dated: June 28, 2010 | United States Magistrate Judge |

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: June 28, 2010     By   s/Patricia T. Morris
                                            Law Clerk to Magistrate Judge Binder